**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WOLVERINE MUTUAL INSURANCE
COMPANY,

        Plaintiff,

v.                                         Case No. 04-CV-72618-DT

THOMAS AND BETTS CORPORATION,

        Defendant.
                                                  /

**OPINION AND ORDER GRANTING IN PART, DENYING WITHOUT PREJUDICE IN PART, DEFENDANT'S MOTION IN LIMINE TO STRIKE OR LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT**

Pending before the court is Defendant's Motion in Limine filed on July 21, 2005, seeking to strike or limit the testimony of plaintiff's expert witnesses. Having reviewed the motion, briefs, and supporting documentation, the court finds that a hearing on the matter is not necessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant in part and deny in part Defendant's motion.

**I. BACKGROUND**

This is an insurance subrogation action arising from a house fire in Jackson, Michigan. (Def.'s Mot. Br. at 1.) The house belonged to Alvin Hawley, Wolverine Mutual Insurance Company's insured. (*Id.*) In the early morning hours of July 8, 2001, Mr. Hawley's guest, Richard Enbody, awoke to the smell of smoke. He ran downstairs to discover that the ceiling of the living room was on fire. (*Id.*) After exiting the house, Mssrs. Hawley and Enbody telephoned the fire department, who arrived shortly thereafter and extinguished the fire. (*Id.*) The fire, which was apparently confined to the living room of Mr. Hawley's home, resulted in an insurance claim and payment by

Plaintiff of $135,325.19 to Mr. Hawley.  (*Id.* at 2.)  Plaintiff seeks to recover this amount from Defendant, the manufacturer of a multiple outlet center (a "power strip") which Plaintiff alleges was the cause of the fire.

Specifically, Plaintiff alleges that the fire began in the southeast corner of the living room, in a power strip which Plaintiff claims was under an aquarium.  (*Id.* at 2.).  The aquarium was supported by a metal rack that had a wood shelf below the level on which the tank was situated.  (McGuire Depo. at 30.)  The aquarium's electrical equipment (e.g., heaters, filters and lights) was plugged into two power strips, which were located either on the wood shelf or on the floor just below the wood shelf; one of the strips was manufactured by Defendant.  (Pl.'s Compl. at 2.)

Plaintiff retained two experts to investigate the fire's origin and cause.  First, Michael S. McGuire, an Electrical Engineer, examined the scene on July 9, 2001, the day after the fire in order to determine "whether or not an electrical failure contributed to the cause of the fire." (McGuire Depo. at 11, Def.'s Ex. C; McGuire Report, Def.'s Ex. E.)  In Mr. McGuire's subsequent report, he concludes that "[t]he fire was caused by a connection failure between the aquarium heater plug and the [Defendant's] power strip." (McGuire Report at 1, Def.'s Ex. E.)

Plaintiff also retained Daniel Terski, an Origin and Cause Investigator, to examine the premises.  Mr. Terski issued a report in which he determined that "the fire originate[d] with one point of origin, that being the shelving unit below the fish tank aquarium." (Terski Report, Def.'s Ex. F at 8.)  Mr. Terski further concluded that the origin of the fire was the "area of the power strips servicing the aquarium," which he stated were located on the shelving unit below the aquarium.  (*Id.*)

2

Mr. Terski's report details that, following his examination, he "placed all electrical components found with the debris in an evidence container and marked same for future examination. This evidence was left in the possession of the insured. . . . Mr. McGuire was responding to the scene to remove these items for future examination." (*Id.*) There appears to be no dispute that, aside from these electrical components, no other evidence was retained by Plaintiff or Plaintiff's experts.

In April of 2003, Defendant retained Patrick J. McGinley to investigate the cause and origin of the fire. (McGinley Depo. at 11, Def.'s Ex. G.) In conducting his investigation, Mr. McGinley reviewed all of the photographs and evidence retained by Messrs. McGuire and Terski, along with various documents, interviews and reports provided by Defendant. (McGinley Report at 2, Pl.'s Ex. B.) McGinley concluded that the fire was not caused by either of the two power strips which were located under or near the aquarium. Further, McGinley found that the fire did not originate in the immediate location of the aquarium, which was located in the southeast corner of the living room. (*Id.*) Instead, he determined that the fire originated on the east wall, several feet away from where the aquarium was situated. (*Id.*) Specifically, McGinley noted the presence of a "V" pattern that "extended below the heat line" which he found indicated the location of the origin of the fire. (*Id.* at 3.) McGinley did not identify an exact source of the fire, stating that "[d]ue to the poor reconstruction and documentation of the scene, it is impossible to identify with certainty exactly what was positioned at the base of the "V" pattern on the east wall, therefore the exact ignition mechanism and scenario cannot be identified." (*Id.*)

Plaintiff filed a complaint against Defendant in Jackson County Circuit Court on June 17, 2004. Defendant removed the case to this court on the basis of diversity jurisdiction on July 15, 2004. In Defendant's instant motion, it argues that Plaintiff's failure to retain key pieces of evidence from the fire scene should result in the exclusion or limitation of both of Plaintiff's expert reports and testimonies.

## II. STANDARD AND DISCUSSION

"The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law." *Beck v. Haik,* 377 F.3d 624, 641 (6th Cir. 2004) (citing *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.,* 174 F.3d 801, 804 (6th Cir.1999)). "Spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction." *Beck,* 377 F.3d at 641. Under Michigan law, "[i]n cases involving the loss or destruction of evidence, a court must be able to make such rulings as necessary to promote fairness and justice." *Brenner v. Kolk,* 573 N.W.2d 65, 70 (Mich. Ct. App. 1998). To that end, Michigan courts hold that "[a] trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation is commenced. *Bloemendaal v. Town & Country Sports Center, Inc.*, 659 N.W.2d 684, 686 (Mich. Ct. App. 2002) (citing *MASB-SEG Prop./Cas. Pool, Inc v. Metalux,* 586 N.W.2d 549 (Mich. Ct. App. 1998)). Specifically, the court may properly exclude evidence that the opposing party has "had no opportunity to rebut because of plaintiff's failure to preserve evidence." *Brenner,* 573 N.W.2d at 72. Alternatively, "[a] party may also be entitled to special instructions if he can raise an issue of fact as to whether a

4

party has failed to preserve relevant evidence." *Beck v. Haik,* 377 F.3d at 641 (6th Cir. 2004*)* (citing *Brenner,* 573 N.W.2d 65 and Mich. Std. Jury Instruction 2d 6.01).

### III.  DISCUSSION

In its motion, Defendant asks that the court sanction Plaintiff for its failure to retain certain pieces of evidence that Defendant argues are material to the issues involved in this case.  Defendant alleges that electrical components were the only pieces of evidence retained by Plaintiff's experts and that other items essential to a determination of the origin of the fire were discarded.  (Def.'s Mot. Br. at 4.)  Specifically, Defendant asserts that it did not have the opportunity to inspect:

1. the remnants of the aquarium;
2. the hood of the aquarium, which contained an electric light fixture;
3. the metal rack that held the aquarium;
4. the wood shelf from the aquarium rack;
5. the lace doily that was located on the aquarium or the aquarium rack;
6. the carpet upon which the aquarium stood;
7. the baseboard and wood paneling on the wall adjacent to the aquarium; and
8. the multiple outlet box into which the power strips were plugged.

(*Id.*)  Defendant argues that all of these items were under the control of Plaintiff, and were discarded after Plaintiff had the opportunity to examine them.  (*Id.* at 4-5.) Defendant further argues that all of these items were material to the determination of the origin of the fire, and its inability to review them has prejudiced its ability to rebut Plaintiff's experts' conclusions.

Plaintiff responds that these items are not significant in assessing the origin of the fire and, further, that Plaintiff's experts did not rely on them when making their

5

reports. Additionally, Plaintiff claims that some of these items (the aquarium hood, the wood paneling on the wall adjacent to the aquarium, the multiple outlet box) were consumed by the fire and even Plaintiff did not have an opportunity to examine them. (Pl.'s Resp. at 5.) Finally, Plaintiff argues that Defendants had access to over 90 color photographs, including photographs of the items listed above, and thus were not prejudiced by any failure of Plaintiff to retain the items.

Having reviewed the parties' briefs, along with the various deposition transcripts and expert reports, the court is not persuaded that Plaintiff's failure to preserve the items that Defendant has identified has so unfairly prejudiced Defendant as to require the complete exclusion of the testimony and reports of Plaintiff's experts. Nonetheless, the court finds that a lesser sanction is warranted in order to "level the playing field." *See Travelers Prop. Cas.,* No. 242966, 2004 WL 1416257, *1 (Mich. Ct. App. 2004) (citing *Ellsworth v. Hotel Corp.,* 600 N.W.2d 129 (1999) (analyzing whether to assess sanctions in terms of ensuring a "fair playing field"). Thus, the court will order that any testimony of Plaintiff's experts be limited to that based upon the evidence which was equally available to Defendant's experts.

Defendant relies heavily on *MASB-SEG Prop./Cas. Pool, Inc. v. Metalux*, 586 N.W.2d 549 (Mich. Ct. App. 1998) to support its assertion that Plaintiff's experts' testimony should be totally excluded. In *MASB-SEG*, the Michigan Court of Appeals upheld the trial court's sanction for spoilation of evidence. *Id.* However, in *MASB-SEG*, the court did not completely *exclude* expert testimony, but instead *limited* the testimony as necessary. Specifically, *MASB-SEG* was a products liability case, in which the plaintiff alleged a fire was caused by defendant's product, a light fixture. *Id.* at 553. As

6

in this case, the plaintiff had retained the allegedly defective product and taken photographs of the scene.  *Id.*  The defendants argued that the failure to retain *all* the relevant evidence (other than the light fixture) unfairly prejudiced them to the extent that a dismissal was warranted.  *Id.*  The appellate court disagreed, finding that the trial court properly limited plaintiff's expert testimony to "that which could be derived only from physical evidence and photographs to which defendants had equal access."  *Id.*

The facts of this case warrant a similar sanction.  As in *MASB-SEG*, the court finds that "[p]laintiff's failure to preserve evidence from the fire scene prejudiced defendants by depriving them of the opportunity to investigate alternative causes for the fire."  *MASB-SEG*, 586 N.W.2d at 553.  Based on the materials submitted to the court, it is clear that Defendant was deprived of at least some opportunity to investigate alternative causes for the fire because of Plaintiff's experts' evidence retention and reconstruction techniques. The court is not convinced, however, that Defendant has established that it was so prejudiced by Plaintiff's failure to retain the items listed above that complete exclusion of Plaintiff's experts' testimonies or reports is necessary. *Travelers Prop. Cas. v. Sani Vac Serv., Inc.,* 2004 WL 1416257 at *1 ("[O]nly where unavailability of evidence unfairly disadvantages a party is a sanction warranted.").

Defendant has not established that the listed items were so vital that Plaintiff's experts' entire testimonies will be unfairly prejudicial or that Defendant will not be able to rebut Plaintiff's experts at all.  "Whether sanctions are necessary to ensure a 'fair playing field' is a function of how important the lost evidence is to the parties' claims or defenses. For example, because lack of unimportant evidence can hardly render the playing field uneven, the lost evidence is not material, so sanctioning the culpable party

7

is not merited." *Travelers Prop. Cas.,* 2004 WL 1416257 at *1 (citing *Ellsworth v. Hotel Corp.,* 600 N.W.2d 129). In this case, the parties dispute how important the particular items were in determining the cause and origin of the fire. McGinley found that the method of reconstruction (or lack thereof) and documentation prevented him from establishing what was located at the base of the "V" pattern which he determined was the origin of the fire. (McGinley Report at 3.) It is not clear, however, that any of the specific items listed by Plaintiff would be crucial in Mr. McGinley's analysis. Defendant asserts that the items were critical, while Plaintiffs experts have testified that these items were not relevant. Absent conclusive evidence, at this stage, of the importance of such missing evidence, the court will not completely foreclose the testimony of Plaintiff's experts.

Nonetheless, inasmuch as there is at least some evidence that these items were relevant, the court will restrict testimony to that which can be derived from the photographs and/or retained physical evidence. By limiting Plaintiff's experts' testimony, both parties may present their competing theories of the case based upon the same evidence.

While Defendant argues a harsher sanction is warranted because it is unable to properly challenge Plaintiff's experts or determine alternative causes of the fire, it has not pointed to specific reasons why this is so. The court has reviewed the report and deposition of Defendant's expert and believes that McGinley will be able to rebut adequately the opinions of Plaintiff's experts, especially after their testimony is so limited. Indeed, McGinley's report relies heavily on the photographs and physical evidence provided to him to make the conclusions that it was "physically impossible"

that Defendant's power strip caused the fire.  (McGinley Report at 2, Pl.'s Ex. 2.) Nowhere in his report or deposition did McGinley state that he needed any of the above listed items in order to refute the conclusions of Plaintiff's experts that the power strip caused the fire.  Moreover, while McGinley certainly testified regarding the poor reconstruction performed by Plaintiff's experts, their methods did not prevent him from reaching his own conclusions regarding the Defendant's power strip.  In sum, the court finds that Defendant has been able to effectively respond to Plaintiff's theory of the case and to submit its own.  Under such circumstances, a limitation will suffice to cure any prejudice caused by Plaintiff's actions.  *See MASB-SEG*, 586 N.W.2d at 553.

For the same reasons, Defendant objects to Plaintiff's expert reports being received. The court has some basic doubt about admissibility, based on the likely hearsay nature of such expert reports, but will express no opinion here as to whether they can, in this case, be independently received as exhibits. If such reports were offered and deemed admissible, Plaintiff's reports would not be excluded based upon the objections found in Defendant's current motion, in light of the court's analysis relating to the experts themselves. It is impossible for the court to determine which, if any, of the findings in their reports were based upon evidence not retained or photographed.  Moreover, although some of their findings may have originally been based on physical evidence not retained, it seems possible that some of those findings could have been based on the photographs.  Thus, if Plaintiff intends to seek to introduce these reports into evidence, Plaintiff would first need to assess what, if anything, might need to be redacted or abridged in order to comply with this order.

9

Finally, the court will also instruct the jury pursuant to Michigan Civil Jury Instruction 6.01 that it may infer that any evidence not properly retained by Plaintiff would have been adverse to Plaintiff.[1] Instructing the jury in this manner will more likely serve to correct any prejudice to Defendant in this regard.

If additional evidence of prejudice is presented at trial, or if Plaintiff's witnesses stray from the limitations imposed in this order, the court will be prepared to entertain the possibility of further sanctions which could include, among other things, striking the testimony and/or reports of Plaintiff's experts, striking portions of testimony, or declaring a mistrial.

### III.  CONCLUSION

IT IS ORDERED that "Defendant's Motion in Limine to Strike or Limit the Testimony of Plaintiff's Expert" [Dkt. # 22] is GRANTED IN PART and DENIED IN PART.

It is DENIED WITHOUT PREJUDICE to the extent it seeks to completely exclude the testimony and/or reports of Plaintiff's experts.  It is GRANTED to the extent it seeks

---

[1] The parties' Joint Proposed Jury Instructions list four possible variations of Michigan Civil Jury Instruction 6.01.  Because Plaintiff's experts have offered testimony that at least some of the evidence was either destroyed by the fire department or too damaged to retain, the court is inclined to find that the appropriate instruction will be 6.01( c), which applies if there is a dispute regarding whether the culpable party has a reasonable excuse for its failure to produce evidence.  See Clark v. Kmart Corp., 640 N.W.2d 892, 895 (Mich. Ct. App. 2002).  This issue, however, need not be conclusively decided at this point.

to limit the testimony and/or reports of Plaintiff's experts to testimony which can be based on the evidence available equally to Plaintiff and Defendant.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  August 19, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 19, 2005, by electronic and/or ordinary mail.

        S/Lisa G. Teets
        Case Manager and Deputy Clerk
        (313) 234-5522